IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| HONORABLE TERRY PETTEWAY, | § | |
| HONORABLE DERRECK ROSE, | § | |
| HONORABLE MICHAEL MONTEZ, | § | |
| HONORABLE PENNY POPE, | § | |
| HONORABLE SONNY JAMES, and | § | |
| ROOSEVELT HENDERSON, | § | |
| | § | |
| *Plaintiffs* | § | Civil Action No. |
| | § | |
| vs. | § | |
| | § | |
| GALVESTON, TEXAS; and | § | |
| THE HONORABLE MARK HENRY, in | § | |
| his capacity as Galveston County Judge | § | |
| | § | |
| *Defendants* | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiffs, THE HONORABLE TERRY PETTEWAY, THE HONORABLE DERRICK ROSE, THE HONORABLE MICHAEL MONTEZ, THE HONORABLE PENNY POPE, THE HONORABLE SONNY JAMES, AND ROOSEVELT HENDERSON (hereinafter referred to as "Plaintiffs"), and file this Original Complaint complaining of Defendants, GALVESTON COUNTY, TEXAS, and MARK HENRY, in his capacity as GALVESTON County Judge (hereinafter referred to as "Defendants"), and in support thereof would show the Court as follows:

- 1 -

# I.

## <u>INTRODUCTION</u>

1.     In August 2011, Galveston County undertook redistricting in light of new census data.  The County sought to reduce the number of Commissioners Court districts that were electorally controlled by racial minorities from two to one.  Also, the County sought to reduce the number of Justice of the Peace and Constable Districts from eight to five.  Such a reduction would have substantially reduced  the number of African-American and Latino elected officeholders in Galveston County.  These Plaintiffs filed suit in this Court under Section 5 of the Voting Rights Act.  *See Petteway, et al. v. Galveston County, Texas, et al.,* 3:11-cv-00511.   Ultimately, Presiding Judge Kenneth Hoyt, along with Circuit Judge Emilio Garza and District Judge Melinda Harmon, enjoined these election changes pending preclearance under Section 5 of the Voting Rights Act.  DOJ then negotiated with Galveston County and agreed to a map for Commissioners Court.  However, DOJ objected to the map adopted for Justice of the Peace and Constable Districts and that map was therefore enjoined under Section 5.  Subsequently, on March 23, 2012, this Court entered an order which indicated that its prior injunction against "use of unprecleared voting changes including the reduction of constables and justice of the peace and redistricting of same is hereby modified and made permanent." Case 3:11-cv-00511, Dkt. 69.

2.     Two months after  the Supreme Court  rendered Section 5 inapplicable to Texas, Galveston County has adopted  a  racially discriminatory electoral map for Justice of the

Peace Districts which both reduces and redistricts Galveston County Justices of the Peace.  The map that was adopted by the Galveston County Commissioner's Court on August 19, 2013 and it reduces the number of Justices of the Peace districts from eight to four, thereby eliminating all but one of the districts that provide an electoral opportunity to Latinos and African-Americans.  Plaintiffs hereby file suit again challenging these redistricting changes as intentionally discriminatory and as a violative of Section 2 of the VRA.  Furthermore, in light of the intentional discrimination, Plaintiffs also hereby seek continued preclearance requirements for Galveston County under Section 3(c) of the VRA.

## II.

## <u>FACTS</u>

3.    On or about August 2, 2011, the Galveston County Court posted an agenda item as follows:  "Discuss and consider approval of a preliminary plan for Justices of the Peace and the Constables Precinct Boundaries for the purpose of redistricting related to the 2010 Census submitted by County Judge."

4.    Subsequently, in the minutes of the meeting, the words "and consider approval of a" were struck through and no action was taken.

5.    Subsequently, public hearings were scheduled to take place on the redistricting process in five separate locations in Galveston County on August 15, 16, 17, 22 and 23, 2011.

6.      During the public hearings, public discussion was held with regard to a total of five different plan options.  The law firm hired by Galveston County presented two separate proposals for redistricting of County Commissioners and one separate proposal for redrawing the Constable and Justices of the Peace precinct lines.  Commissioner Stephen Holmes also presented an alternative plan for redistricting which included  a proposal to retain the existing precinct lines for the Constable and Justices of the Peace precincts.

7.      Numerous Galveston County citizens attended the public hearings and spoke out against the maps proposed by the law firm hired by Galveston County.

8.      Nevertheless, on August 30, 2011, the Galveston County Commissioners Court adopted an order which established radically new boundaries for  the Constables and Justices of the Peace Precincts in Galveston County.

9.      The plan adopted by the Galveston County Court on August 30, 2011,  reduced the number of Constables and Justices of the Peace Precincts in Galveston County from eight to five and altered the boundaries of most of the Constable and Justices of the Peace precincts in Galveston County.

10.     In 1992, a Consent Judgment and Election Order was entered in the case of "*Leroy Hoskins, et al. vs. John Hannah, et al.*" Civil Action No. G-92-12 in the United States District Court for the Southern District of Texas, Galveston Division.

11.     That Order provided for the creation of a Constable and Justice of the Peace Precinct on Galveston Island consisting of voting precincts numbered 107, 108, 109, 310, 311, 313, 314.

12.     The Court Order further created a Constable and Justice of the Peace Precinct on the Mainland of Galveston County consisting of voting precincts 112, 129, 132, 133, 319, 330, 331, 334, 336 and 337.

13.     The Court Order specifically stated that the creation of these Constable and Justice of the Peace precincts "will create the opportunity for minority voters to participate in the political processes leading to the nomination and election of Justices of the Peace and Constables in Galveston County".

14.     The proposed plan adopted by Galveston County Court on August 30, 2011, eliminated the Constable Precincts and Justice of the Peace Courts that were created by the 1992 Order by merging them into one single larger Constable and Justice of the Peace Precinct.

15.     Galveston County made a submission under Section 5 of The Voting Rights Act to the Department of Justice for pre-clearance of its August 30th, 2011, redistricting plan for redistricting of the Constable and Justice of the Peace Precincts on or about October 19th, 2011.

16.     On November 14, 2011, these Plaintiffs filed suit seeking declaratory and injunctive relief to prevent Defendants from using the newly enacted but not yet precleared plan in any election.  Plaintiffs brought that  prior action pursuant to the

United States Constitution, 42 U.S.C. § 1983, 42 U.S.C. §1973 (Section 2 of the Voting Rights Act of 1965, as amended) and 42 U.S.C. § 1973c (Section 5 of the Voting Rights Act of 1965, as amended).  The Plan would have harmed minority voters, including Plaintiffs, by reconfiguring the boundaries of most of the existing Constable and Justice of the Peace Precincts in Galveston County.  The injury to minority voters throughout the County as a result of the reconfiguration of the precincts was  neither necessary nor justified.

17.  The Plan violated Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, by significantly minimizing the opportunities for minority voters to participate in the political process and to elect Representatives of their choice.

18.  The Plan was drawn to ensure that population gains in minority communities from 2000 to 2010 did not afford minority voters increased electoral opportunity equal to their population.

19.  Although the Latino population accounted for approximately 50% of Galveston County's population growth between 2000 and 2010, Latinos and African Americans were denied the opportunities they were afforded under the  boundaries that existed prior to August 30th, 2011.  The  proposed  configuration adopted by Galveston County Commissioner's Court on August 30th, 2011, constituted an unlawful dilution of minority voting strength under Section 2 of the Voting Rights Act, and the Fourteenth and Fifteenth Amendments to the United States Constitution.

20. The Plan adopted on August 30, 2011, was drawn with the purpose, and would have had the effect, of minimizing and reducing the strength of minority populations in Galveston County.  While the pre-2011 map contained several effective minority opportunity districts, the Plan adopted on August 30, 2011, contained no such districts.   Reducing the number of effective minority opportunity districts would have constituted unlawful retrogression under Section 5 of the Voting Rights Act, Section 2 of the Voting Rights Act, and the Fourteenth and Fifteenth Amendments to the United States Constitution.

21. The Department of Justice agreed that the adopted plan would result in discrimination against minority voters and therefore entered an objection under Section 5. *See* Ex. 1.

22. The map as adopted by Galveston County on August 30, 2011, was legally unenforceable unless and until preclearance was  granted.  *See* 42 U.S.C § 1973c.

23. This Court, as described above, then constituted as three judges, enjoined the use of the election map for the offices of Constables and Justices of the Peace.  See Case No. 3:11-cv-00511, Dkt. 69, p. 2.

24. On June 25, 2013, the Supreme Court in *Shelby County vs. Holder* struck down as unconstitutional the coverage formula that applied Section 5 to Texas and its counties.

25. On August 16, 2013, the Galveston County Commissioner's Court posted on the county's website a proposed new map which reduced the number of Justice of the

Peace Districts from eight to four together with an agenda for a special meeting to take place just three days later on August 19th, 2013. *See* Exs. 2 & 3.

26. The only item on the special meeting agenda of August 19, 2013, was "Consideration of adopting new Justice of the Peace Precinct Maps". *See* Ex. 3.

27. On August 19, 2013, after a public meeting that lasted approximately two hours, Galveston County adopted a map for Justice of the Peace Districts that reduced the number of Justice of the Peace districts from eight to four. *See* Ex. 3.

28. Galveston County apparently used the same law firm and map creator to prepare and revise the map adopted on August 19, 2013, as they had previously used for the map that was the subject of the injunction issued on March 23, 2012.

29. The map that was adopted on August 19, 2013, differed slightly from the map that had been posted on the County's website on August 16, 2013. Although shape files were still not available as of the date of this filing it appears as though some minor changes were made to insure that incumbent's residences were not redistricted out of their newly drawn precincts. Of course, the drastic revisions of the boundaries of those newly drawn precincts will make it impossible for any minority officeholder or candidate to be elected in three of the four newly drawn precincts.

30. It is unclear whether the newly adopted map has any effect on the offices of Galveston County Constables since there was no item posted on the Special Meeting Agenda which made any mention of Constable Districts.

31.     The newly adopted map was hastily conceived and was adopted with minimum public input in a process that vastly deviated from the past Galveston County redistricting process.  For example there were no public hearings held to discuss the map that was posted on August 16, 2013.

32.     Additionally, one of the criticisms of DOJ of the map adopted by the County in 2011, was the failure to communicate with the one minority county commissioner in any meaningful fashion prior to the creation of the map that was ultimately adopted.  Similarly, the Galveston County Commissioner's Court again failed to involve the lone minority commissioner in any significant fashion in the creation of the map that was adopted on August 19, 2013.

33.     In fact, it does not appear as though Galveston County made any attempt to obtain input from any resident of the county, minority or otherwise, prior to the date of this hastily called special meeting which was posted on Friday, August 16, 2013, and took place on Monday, August 19, 2013.

34.     In light of the knowledge the County had from the previous litigation involving these facts and the information learned from the previous DOJ objection, the County's decision to move forward with this new map can be described as nothing less than intentionally discriminatory.

35.     In Galveston County, the total citizen population increased from 250,158 in 2000 to 291,309 as of the completion of the 2010 census. The African American population in Galveston County was 38,625 in 2000 and it increased to 39,326 in

2010.  The Latino population was 44,939 in 2000 and it increased to 65,522 in 2010.

36.     Approximately 50% of the population growth in Galveston County between 2000 and 2010 can be attributed to minority growth and specifically to growth in the Latino community.  Galveston County has now rewarded this growth by reducing election opportunities for this community.

37.     For almost twenty years since the implementation of the 1992 consent judgment discussed *infra*, Latinos and African Americans have benefited from several Constable and Justices of the Peace opportunity precincts, including but not limited to, precinct numbers 1, 2, 3 and 5.

38.     Despite accounting for approximately 50% of the growth in Galveston County over the last decade, the County has passed two Plans since the Census that would eliminate any opportunity district, for Latinos and significantly reduce opportunity districts for African Americans, including but not limited to, those previously created by the 1992 consent judgment.

39.     The Latino population is sufficiently cohesive and compact to justify an opportunity district under Section 2.

40.     The African-America population is sufficiently cohesive and compact to justify an opportunity district under Section 2.

41.     On September 25, 1975, the Voting Rights Act of 1965 ("Act") was extended and amended to cover the State of Texas.    Where minority communities have

diminished opportunity to elect candidates of their choice, their voting strength has been diluted, and so unlawfully abridged under the Act.

42. The newly adopted Justice of the Peace Districts are composed of areas that do not have a common political interest.

43. The addition and/or merger of these dissimilar communities was designed to prevent African American and Latino voters from having the opportunities to elect candidates of their choice.

44. .There was no opportunity for the submission of any alternate plans for Justice of the Peace Districts that would have preserved minority opportunity districts and been supported by the residents of Galveston County.

45. Galveston County's new election map is discriminatory in intent and in effect.

### III.

### JURISDICTION AND VENUE

46. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1357, and 2284; and pursuant to 42 U.S.C. §§ 1973, 1973j(f), and 1983.  Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201, 2202, and 2284, as well as by Rules 57 and 65 of the Federal Rules of Civil Procedure. Venue is proper pursuant to 28 U.S.C. §§ 1391(b).

47. Plaintiffs seek attorneys' fees and costs pursuant to 42 U.S.C. §1973 l(e) and 1988.

### IV.

## PARTIES

48.     Plaintiff, the Honorable Terry Petteway, The Honorable Derrick Rose, The Honorable Michael Montez, The Honorable Penny Pope and The Honorable Sonny James, are citizens and registered voters and elected officials who serve in several of the Constable and Justice of the Peace precincts that are or could be affected by the County's proposed redistricting plans.   Plaintiff, Roosevelt Henderson, is a citizen and registered voter residing in a precinct that is affected by the County's proposed redistricting plans.  Plaintiffs have standing to bring this action under 42 U.S.C. § 1983 to redress injuries suffered through the deprivation, under color of state law, of rights secured by the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973 and by the United States Constitution.

49.     Plaintiff, The Honorable Terry Petteway, is an African American and a resident of Galveston County and is presently serving as the Galveston County Constable of Precinct No. 2, located at the Sam Popavich Building, 1922 Sealy, Galveston, Texas, 77550.

50.     Plaintiff, The Honorable Derreck Rose, is an African American and a resident of Galveston County and is presently serving as the Galveston County Constable of Precinct No. 3, located at 203 Vauthier, LaMarque, Texas  77568.

51.     Plaintiff, The Honorable Michael Montez, is a Latino and a resident of Galveston County and is presently serving as the Galveston County Constable of Precinct 5, located at 2516 Texas Ave., Texas City, Texas, 77590.

52.     Plaintiff, The Honorable Penny Pope, an African American and a resident of Galveston County and is presently serving as the Galveston County Justice of the Peace of Precinct 2, located at 1922 Sealy, Sam Popovich Annex, Galveston, Texas, 77550.

53.     Plaintiff, The Honorable Sonny James, is an African American and a resident of Galveston County and is presently serving as the Galveston County Justice of the Peace of Precinct 3, located at 203 Vauthier Road., LaMarque, Texas 77568.

54.     Plaintiff, Roosevelt Henderson, is an African American and a resident of Galveston County and a resident of Constable and Justice of the Peace Precinct 3.

55.     Defendant, GALVESTON COUNTY is a political subdivision of the State of Texas and is a covered jurisdiction under the remaining provisions of the Voting Rights Act. Galveston County, Texas may be served by service upon Mark Henry, County Judge at 722 1st Street, Galveston, Texas 77550.

56.     Defendant, THE HONORABLE MARK HENRY is County Judge of Galveston County.  Defendant HENRY is sued in his official capacity.  Defendant HENRY is the Chief Officer of GALVESTON County. Mark Henry, County Judge of Galveston may be served at 722 1st Street, Galveston, Texas 77550.

## V.

## CLAIMS

### Count 1

57.     Plaintiffs reallege the facts set forth above.

58.     The County's proposed Justices of the Peace Precinct Redistricting Plan violates Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, in that, under the totality of the circumstances, Plaintiffs and minority voters are denied an equal opportunity to participate effectively in the political process and to elect candidates of their choice to the offices of Justices of the Peace.  The Plan also violates Section 2 of the Voting Rights Act, 42 U.S.C. §1973, because, under the totality of circumstances, Plaintiffs and minority voters are denied an equal opportunity to participate effectively in the political process and to have any meaningful or significant influence in elections for the offices of the Justices of the Peace in Galveston County.

59.     If the newly adopted plan is intended for Constable Districts as well, the Plan violates Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, in that, under the totality of the circumstances, Plaintiffs and minority voters are denied an equal opportunity to participate effectively in the political process and to elect candidates of their choice to the offices of Constable.  The Plan also violates Section 2 of the Voting Rights Act, 42 U.S.C. §1973, because, under the totality of circumstances, Plaintiffs and minority voters are denied an equal opportunity to participate effectively in the political process and to have any meaningful or significant influence in elections for the offices of Constable in Galveston County.

**Count 2**

60.     Plaintiffs reallege the facts set forth above.

61.     The adopted plan violates the Fourteenth and Fifteenth Amendments to the United States Constitution because it intentionally discriminates against Latino and African American persons by denying them an equal opportunity to participate in the political process, to elect candidates of their choice to the offices of Justices of the Peace, and to have any meaningful or significant influence in elections for offices of the Justices of the Peace.

62.     If the newly adopted plan is intended for Constable Districts as well, the Plan violates the Fourteenth and Fifteenth Amendments to the United States Constitution because it intentionally discriminates against Latino and African American persons by denying them an equal opportunity to participate in the political process, to elect candidates of their choice to the offices of Constable, and to have any meaningful or significant influence in elections for offices of Constable.

**Count 3**

63.     Plaintiffs reallege the facts set forth above.

64.     The Plan violates the First, Fourteenth and Fifteenth Amendments to the United States Constitution because its districts are racial gerrymanders, drawn with excessive and unjustified use of race and racial data.

**V.**

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs respectfully pray that this Court:

- 15 -

65.    Assume jurisdiction of this action.

66.    Issue a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rules of Civil Procedure Rule 57, declaring that the Plan adopted on August 19, 2013, for Galveston County's Justice of the Peace District (and Constables if so applied): (1) dilutes the voting strength of minority voters in violation of Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973, and in violation of the United States Constitution; (2) is an unconstitutional gerrymander in violation of the First and Fourteenth Amendments to the United States Constitution and Article I of the United States Constitution; and (3) cannot be administered pursuant to those laws.

67.    Issue a temporary restraining order, preliminary and permanent injunctions enjoining the Defendants, their agents, employees, and those persons acting in concert with them, from enforcing or giving any effect to the proposed boundaries as drawn in the Plan, including enjoining Defendants from conducting any elections for the Justice of the Peace (and Constables is so applied) based on the Plan.

68.    Make all further orders as are just, necessary, and proper to ensure complete fulfillment of this Court's Declaratory and injunctive orders in this case.

69.     Issue an order requiring Defendants to pay Plaintiffs' costs, expenses and reasonable attorneys' fees incurred in the prosecution of this action, as authorized by the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988 and by the Voting Rights Act, 42 U.S.C. § 1973l(e).

70.     Grant an order retaining jurisdiction over this matter pursuant to Section 3(c) of the Voting Rights Act (42 U.S.C. § 1973a(c)) and requiring the Defendant, their agents, employees, and those persons acting in concert from altering their election policies, including redistricting, until such changes have been precleared by this Court or the Department of Justice ; and

71.     Grant such other and further relief as it seems is proper and just.

Dated this 26th day of August, 2013.

Respectfully Submitted,

**BRAZIL & DUNN**


 */s/ Chad W. Dunn*
Chad W. Dunn – Attorney In Charge
State Bar No. 24036507
BRAZIL & DUNN
K. Scott Brazil
State Bar No. 02934050
4201 FM 1960 West, Suite 530
Houston, Texas  77068
Telephone:  (281) 580-6310
Facsimile:   (281) 580-6362
chad@brazilanddunn.com
scott@brazilanddunn.com


NEIL G. BARON
Texas State Bar No. 01797080
LAW OFFICE OF NEIL G. BARON
914 FM 517 W, Suite 242
Dickinson, Texas 77539
Telephone (281) 534-2748
Facsimile  (281) 534-4309
neil@ngbaronlaw.com

**ATTORNEYS FOR PLAINTIFFS**