# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | | |
|---|---|---|
| TERRY PETTEWAY, DERRICK ROSE, MICHAEL MONTEZ, SONNY JAMES, and PENNY POPE, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § § | Civil Action No. 3:13-CV-00308 |
| GALVESTON, TEXAS, and HONORABLE MARK HENRY, in his official capacity as Galveston County Judge, | § § § § § § | |
| *Defendants*. | § § | |

## PLAINTIFFS' MOTION TO FILE SUPPLEMENTAL COMPLAINT

Pursuant to Federal Rule of Civil Procedure 15(d), Plaintiffs respectfully move for leave to file a supplemental complaint "setting out . . . event[s] that happened after the date of the [original] pleading" in this case." Fed. R. Civ. P. 15(d). Plaintiffs respectfully request that the attached proposed Supplemental Complaint be accepted and docketed as filed, and Defendants be ordered to "plead to the supplemental pleading within a specified time." *See Id.*

## BACKGROUND

While this case has remained pending, the 2020 Census redistricting data was released and Galveston County underwent a new round of redistricting. As Plaintiffs have shown throughout this case, the 2013 reduction in the number of Justice of the Peace ("JP") precincts was the product of intentional racial discrimination. Yet in the 2021 redistricting cycle, the County simply left the JP precinct lines unchanged. The 2020 Census reveals that Galveston County's minority population has had its share of the voting age population grow since Plaintiffs' original complaint

1

was filed, and the Anglo population's share of the voting age population has declined. The new Census figures add additional evidence of the magnitude of the discriminatory effects that flow from the County's intentionally racially discriminatory reduction in the number of JP precincts.

Moreover, the County has now eliminated the only Commissioner precinct in which minority voters had succeeded for decades in electing their preferred candidate, currently Commissioner Stephen D. Holmes. As the maps below show, the County has cracked apart Galveston County's Black and Latino population, submerging it across all four Commissioner precincts to dilute the ability of Black and Latino voters to elect their preferred candidate. The precincts shaded in blue are those with Black and Latino voting age populations exceeding 35% (with darker shading signifying a greater percentage of minority voters). The first map shows the benchmark plan, in which Black and Latino voters have elected their candidate of choice in Commissioner precinct 3—a precinct that runs through the center of the county and includes the bulk of the county's Black and Latino population. The second map shows the newly enacted plan, which radically reconfigures the map to evenly crack the minority population among four Anglo-dominated precincts.

## Benchmark Plan



## 2021 Enacted Plan



3

The dismantling of the existing majority-minority district in which Black and Latino voters succeeded in electing their preferred candidate, Commissioner Stephen D. Holmes, is the product of intentional racial discrimination and unlawful racial gerrymandering. The failure to draw a new district in which Black and Latino voters form the majority of eligible voters violates Section 2 of the VRA. Plaintiffs thus seek to supplement their complaint to add supplemental factual allegations regarding the Census data with respect to their existing challenge to the 2013 JP plan, as well as to raise supplemental factual allegations and claims of intentional discrimination, racial gerrymandering, and discriminatory results regarding the Commissioners plan.

## ARGUMENT

The Court should grant Plaintiffs' motion to file a supplemental complaint. "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15; *Burns v. Exxon Corp.*, 158 F.3d 336, 343 (5th Cir. 1998). Rule 15(d) is intended to give the court "broad discretion in allowing a supplemental pleading." Fed. R. Civ. P. 15. Rule 15(d) advisory committee's note to 1963 amendments. When a government enacts a new law while related litigation is already pending, "[t]he interest of judicial economy . . . militates in favor of allowing supplemental pleadings." *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 625 (6th Cir. 2016). "When a dispute is complicated and protracted, and a new complaint is the likely alternative, allowing supplemental pleadings before a court already up to speed is often the most efficient course." *Id.*

A court should grant leave to file a supplemental complaint if supplementation would 1) allow for complete adjudication of the parties' disputes, and 2) not cause undue delay or prejudice. *See Jackson Women's Health Org. v. Dobbs*, 379 F. Supp. 3d 549, 551 (S.D. Miss. 2019), *aff'd*,

951 F.3d 246 (5th Cir. 2020); *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 1611, 206 L. Ed. 2d 955 (2020); *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1057 (9th Cir. 1981); 6 C. Wright & A. Miller, Federal Practice and Procedure: Civil s 1504 (1971).

I. **Supplementing Plaintiffs' Original Complaint Promotes an Efficient Adjudication of the Parties' Disputes.**

Granting Plaintiffs leave to file their supplemental complaint will promote the efficient adjudication of the parties' disputes. The 2013 JP plan that is subject to Plaintiffs' original complaint, and for which trial has been held, has even greater discriminatory effects in light of the 2020 Census data.

More importantly, the evidence related to the 2013 JP redistricting process, and this Court's adjudication of Plaintiffs' intentional discrimination claim against that plan, bear heavily on the resolution of Plaintiffs' intentional discrimination claim against the 2021 Commissioners Court plan. To prove their claim that the adoption of the 2021 Commissioners Court plan was intentionally discriminatory, Plaintiffs will be required to provide evidence regarding "the historical background of the decision" and "the specific sequence of events leading up to the decision." *Vill. of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977). The discriminatory process that resulted in the 2013 JP plan is thus a critical feature of Plaintiffs' supplemental claims against 2021 Commissioners' Court plan. A supplemental complaint in this Court, rather than the filing of a new lawsuit, will provide for the most efficient adjudication of the parties' disputes because this Court has already received all the evidence and held trial proceedings regarding the 2013 enactment, and will thus be equipped to weigh that evidence most efficiently as part of the *Arlington Heights* framework in adjudicating Plaintiffs' claims regarding the 2021 Commissioners Court plan. Further, a supplemental complaint before

this Court will avoid the potential for inconsistent adjudication of how the 2013 process bears on whether the 2021 reenactment was intentionally discriminatory. Judicial economy is thus best served by a supplemental complaint in this case rather than the filing of a new lawsuit.

Moreover, the facts that form the basis of Plaintiffs' supplemental complaint demonstrate an ongoing pattern of discrimination. *See Griffin v. Cty. Sch. Bd. of Prince Edward Cty.,* 377 U.S. 218, 226 (1964); *Garcia v. Hackman*, No. CA C-10-311, 2011 WL 2457918, at *19 (S.D. Tex. June 16, 2011) (granting leave to supplement complaint under *Griffin* where supplemental allegations flowed from overall scheme plaintiff alleged). In *Griffin,* the Supreme Court held that Plaintiffs could file a supplemental complaint where facts alleging ongoing official discrimination were "merely part of the same old cause of action arising out of the continued desire of colored students . . . to have the same opportunity for state-supported education afforded to white people." *Id.* Here, as in *Griffin*, the claims in the Original Complaint alleged that the County flouted the Department of Justice's objections to the JP plan and adopted a map which discriminated against Black and Hispanic voters in the County. Doc. 1 at ¶¶ 1-2, 15-16. The County only adopted a less discriminatory map for the Commissioners Court Precincts because they were still subject to preclearance under Section 5 of the VRA, and subsequently enacted an intentionally discriminatory JP plan after the Supreme Court's decision in *Shelby County v. Holder* rendered preclearance inapplicable in the County. *Id. See also Petteway v. Henry,* No. CIV.A. 11-511, 2011 WL 6148674, ECF No. 69 at 2 (S.D. Tex. Dec. 9, 2011) (ordering Galveston County to adopt the Commissioners Court map which was precleared by the Department of Justice). The Supplemental Complaint alleges that the County has continued this pattern of discrimination with respect to both the JP and Commissioners' Court plans. These allegations—from 2011 to present—form a singular pattern of discrimination that is most sensibly adjudicated by a single Court.

## II. Plaintiffs Satisfy the Criteria for Supplementation.

A supplemental complaint will not cause undue delay or prejudice to Defendants. A court should consider several factors in granting leave to supplement a complaint. including "(1) undue delay, (2) bad faith or dilatory motive by the movant, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, or (5) futility of amendment." *Jackson Women's Health Org. v. Dobbs*, 379 F. Supp. 3d at 551; *Garcia v. Hackman*, 2011 WL 2457918, at *19. Here, these factors weigh in favor of supplementation. The facts which gave rise to the Supplemental Complaint occurred after the January 2014 trial following the Original Complaint. Plaintiffs' supplemental allegations and claims relate to the recently completed 2021 redistricting process, and so Plaintiffs' request to raise them now is not the product of undue delay or dilatory behavior. Moreover, there has been no prior deficiencies that were uncured; the supplemental complaint is caused only by the newly enacted 2021 plan. Further, the supplementation of facts and claims will not prejudice Defendants. The supplemental allegations and claims will remain the same whether they are brought in this case or a new one, and so Defendants cannot suffer any legal prejudice by the supplementation in this pending case. Indeed, a new case before a new Court—unfamiliar with a significant aspect of the evidence necessary to the *Arlington Heights* analysis—would likely increase costs for Defendants and would risk the possibility of inconsistent determinations of relevant facts, which would prejudice both parties and be inconsistent with the public interest. *See Enniss Fam. Realty I, LLC v. Schneider Nat. Carriers, Inc.,* 916 F. Supp. 2d 702, 717 (S.D. Miss. 2013) (recognizing that new litigation would likely surpass the expenses that would be incurred by supplementation).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Leave to File Plaintiffs' Supplemental Complaint, direct the Clerk to docket as filed the attached proposed Supplemental Complaint, and direct the Defendants to plead to the Supplemental Complaint in such time period as the Court directs. *See* Fed. R. Civ. P. 15(d).

January 18, 2022

Mark P. Gaber*
Caleb Jackson*
Valencia Richardson*
Campaign Legal Center
1101 14th St. NW, Ste. 400
Washington, DC 20005
(202) 736-2200
mgaber@campaignlegal.org
cjackson@campaignlegal.org
vrichardson@campaignlegal.org

Sonni Waknin*
UCLA Voting Rights Project
3250 Public Affairs Building
Los Angeles, CA 90095
Telephone: 310-400-6019
sonni@uclavrp.org

**Motion for admission pro hac vice forthcoming*

Respectfully submitted,

/s/ Chad W. Dunn
Chad W. Dunn (Tex. Bar No. 24036507)
Brazil & Dunn
4407 Bee Cave Road
Building 1, Ste. 111
Austin, TX 78746
(512) 717-9822
chad@brazilanddunn.com

Neil G. Baron
Law Office of Neil G. Baron
1010 E Main Street, Ste. A
League City, TX 77573
(281) 534-2748
neil@ngbaronlaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that, on January 18, 2022, the foregoing was served on all counsel of record via the Court's CM/ECF system.

*/s/ Chad W. Dunn*
Chad W. Dunn

*Counsel for Plaintiffs*