United States District Court
Southern District of Texas
**ENTERED**
August 31, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| TERRY PETTEWAY, DERRECK ROSE, MICHAEL MONTEZ, PENNY POPE, SONNY JAMES, and ROOSEVELT HENDERSON, Plaintiffs, | § § § § § § § |
| VS. | §  CIVIL ACTION NO. 3-13-308 |
| GALVESTON COUNTY and MARK HENRY, Defendants. | § § § |

## RULING ON BENCH TRIAL

During the bench trial in this case, the Court orally ruled in favor of the Defendants on Plaintiffs' vote dilution claims. The crux of that ruling is that while the 2013 Plan reduced the number of majority-minority JP/Constable precincts in Galveston County, it *increased* the percentage of Galveston County residents living in a majority-minority district. When the County had nine precincts, two of them (Precincts 2 and 3) were majority-minority. The 2013 Plan provided for four precents, one of which was majority-minority. The Voting Rights Act is aimed at protecting the rights of minority citizens, not at protecting elected officials. The Plaintiffs thus failed to show vote dilution as the voting power of minority voters was not diminished.

That left the Plaintiffs statutory and constitutional claims that the 2013 Plan was motivated by discriminatory intent. The Court regrets the delay.

Having reviewed the testimony, exhibits, and law, the Court now also rules in favor of the Defendants on the intent claims. Both sides presented evidence that

supports their position. There are two main reasons why the Court concludes Plaintiffs have not proven discriminatory intent. The first is the reason that motivated the ruling on the dilution claim. The 2013 Plan did not reduce the influence of minority voters. As a result, it is hard to ascribe discriminatory intent to the change when it left minority voters with control of a greater percentage of the JP/Constable precincts.

The second factor distinguishes this case from most other voting rights cases. The reduction in the number of precincts achieved significant cost savings and brought the caseloads of the JPs more into line with the caseloads of JPs in other urban areas. Evidence indicated that the reduction in precincts would save the county roughly $1 million in the JP budget and similar dollars in the Constable budget. Jan16 Trial Tr. at 105:8–16. With nine JPs, Galveston County JPs had much lighter dockets than JPs in other populous counties. The pre-2013 caseload was such that a single JP in Harris County handled the same volume of cases in a single month that all 9 JPs in Galveston County handled in an entire year! Jan. 14 Tr. Transcript 249:11–14. What is more, the volume of cases handled by JPs in Galveston County decreased significantly from 2004 to 2011. The 2013 Plan thus generated substantial savings for the county and brought the county more in line with other Texas counties (many of which had fewer JP/Constable precincts despite having much larger populations than Galveston County). Indeed, the *Galveston County Daily News* had advocated for a reduction in the number of precincts, demonstrating this was a longstanding concern about efficiency.

If the reduction in size had been accompanied by a decrease in the percentage of majority-minority precincts, then there might be an argument that the efficiency rationale was pretext for decreasing the power of minority voters. But as discussed, creating one minority-majority precinct out of four meant that there was no reduction in the percentage of Galveston County citizens living in an area where minority

voters had the power to elect a JP and Constable of their choice. So the cost-savings rationale along with the preservation (if not augmentation) of minorities voting power leads the Court to reject the intent claims. Other evidence also points in this direction, including County Commissioner Dennard's inviting the Chair of the County Democratic Party, Lloyd Criss, to participate in the drawing of the new precinct lines.

For these reasons, the Court will enter judgment in favor of the Defendants on all claims.

**SIGNED** August 31, 2022.

_____
Gregg Costa
United States Circuit Judge[1]

---

[1] Sitting by designation